IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

In Re

JOEY BRADFORD TOLLEY,

    Debtor,

PUTNAM COUNTY BANK,

        Plaintiff,

v.                                             CIVIL ACTION NO. 3:09-1550

JOEY BRADFORD TOLLEY, Debtor in Possession,
and OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending is the appeal of Putnam County Bank ("the Bank"). In Bankruptcy Court below, Judge Pearson Ordered that the Bank's deed of trust was invalid as to a disputed 131 acre tract of property in Putnam County, West Virginia. For reasons explained below, the Court **AFFIRMS** the decision of the Bankruptcy judge. The appeal of Putnam County Bank is **DENIED**.

**Background**

    The Bank commenced this action in Bankruptcy Court seeking a declaratory judgment that the Bank's deed of trust constitutes a lien of the Bank valid on approximately 398 acres near the town of Eleanor in Putnam, County West Virginia. On March 8, 2007, Joey B. Tolley granted a

deed of trust to J.R. Wilson, trustee of Putnam County Bank, to secure a note in the principal amount of $2,750,000.00, so that he could obtain financing for a development project. The deed of trust was recorded in the office of the Putnam County Commission on March 12, 2007, in trust deed book 822 at page 417. The Real Property of which the deed is concerned is designated at the beginning of the document as "398 Acres Northwoods Subdivision, Eleanor, WV 25070." An exhibit – entitled "Legal Description" attached to the deed of trust contains descriptions of three parcels of land including boundary points and a statement of acreage encompassed within each tract. If the acreage of each of the three tracts is combined it totals approximately 267 acres. A tract of land containing between 130 and 131 acres was not included in the Legal Description and is the subject of the dispute. The Bank claims that its lien should encompass not only the 267 acres precisely described in the deed of trust, but also the additional tract of approximately 131 acres.

      The Bank argues that both itself and Mr. Tolley intended to include the full 398 acres, including the disputed fourth tract in the deed of trust. (The Appellees maintain that the intent was ambiguous.) The parties agree that Mr. Tolley's attorney, Eric Embree – who prepared the deed of trust – purposefully omitted the 131 acre tract from the document. He testified that the 131 acres is not part of the Northwoods subdivision, but rather a separate subdivision. No map showing the entirety of the Northwoods subdivision has been filed with the Putnam County Clerk's office.

      In its motion for summary judgment before the Bankruptcy Court, and in its memorandum in support of appeal here, the Bank argues that it is entitled to a reformation of its deed of trust because there was a meeting of the minds between itself and Mr. Tolley. They argue that the omission of 131 acres in the deed of a trust is attributable to a scrivener's error. The Bank further argues that the pending bankruptcy proceeding should not bar the reformation of the deed of trust

because no hypothetical creditor or purchaser in whose shoes the debtor in possession may stand would be prejudiced by the reformation: the Bank contends that the discrepancy in acreage between the land designation – 398 Acres Northwoods Subdivision – and parcel descriptions was enough to put any creditor or purchaser on inquiry notice that the deed of trust was meant to cover the 131 acres.

The Appellees, defendants below, argued in their response to summary judgment, and in memoranda in opposition here, that the discrepancy in acreage between the land designation and land description was not sufficient for inquiry notice. They additionally argue, pursuant to 11 U.S.C. § 544, that regardless of notice the debtor-in-possession could avoid the deed of trust and the Bank's lien. Appellees final argument is that 11 U.S.C. § 362 serves to bar the bank from litigating the extent of its lien while bankruptcy is pending.

In an Order dated October 13, 2009, the Bankruptcy Court granted the motions of summary judgment in favor of Mr. Tolley and the Official Committee of Unsecured Creditors. It sided with these parties on each of the issues raised. The Court first found, "[a] bona fide purchaser is not on constructive or inquiry notice that the deed of trust, slip. op. at 2 (Bankr. S.D. W.Va. Oct. 13, 2009). encumbers the 131 acre tract which is nowhere identified or described in the instrument." *In re Tolley*, No. 08-30137   It further found, with reference to 11 U.S.C. § 544 that the "trustee's status as judicial lien creditor and a bona fide purchaser defeats the rights of Putnam County Bank with respect to the 131 acre tract." *Id.*  Finally, it concluded, pursuant to 11 U.S.C. § 362 that

> it would be impermissible for the Court to grant stay relief to permit the Plaintiff to seek in state court an order reforming its deed of trust to specifically include as property conveyed therein the 131 acres, and such a proceeding is and should be subject to the stay, whether commenced in Bankruptcy Court or

3

> anywhere else because it is the Plaintiff's objective to
> improve its position with respect to the property.

*Id.*

## Standard of Review

In considering a bankruptcy appeal, the court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *In re Rushour*, 433 F.3d. 393, 398 (4th Cir. 2005) (citing *In re Banks*, 299 F.3d 296, 300 (4th Cir. 2002). This matter concerns the respective grant and denial of motions for summary judgment by the Bankruptcy Court. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may only be rendered if "the discovery and disclosure material on file. . . show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

It is unclear from the filings whether or not the parties agree on a standard of review. The Bank argues that the Bankruptcy Court characterized some of its findings as findings of fact. Because of the procedural posture of summary judgment, however, these cannot be considered as decisions on disputed issues of fact. Any "factual findings" made by the Bankruptcy Court must be considered conclusions of law that no genuine issue of material fact exists. *Rosen v. Bezner*, 996 F.2d 1527, 1530 n.2 (3d Cir. 1993). Because the conclusions of the Bankruptcy Court will be considered decisions of law, the proper standard of review is *de novo*.

## Analysis

The Bank raises three issues on appeal: 1) that the Bankruptcy Court erred by concluding that litigation regarding the disputed 131 acres was barred by 11 U.S.C. §§ 362 and 544; 2) that the

Bankruptcy Court erred in finding that the reference to 398 Acres Northwoods Subdivision would not serve as constructive notice; and finally, 3) that the Bankruptcy Court erred in concluding that the debtor-in-possession would not be bound by constructive notice as a result of 11 U.S.C. § 544. The Court first addresses the argument concerning the reference to 398 Acres Northwoods Subdivision and whether that is sufficient to impart constructive notice upon the debtor-in-possession. The other two issues will be addressed in turn.

I. **The Discrepancy Between the Designation of Property as 398 Acres Northwoods Subdivision and the Legal Description in the Deed of Trust Was Not Sufficient to Place a Buyer of Creditor on Inquiry Notice.**

Generally, "state law determines the rights and obligations of debtors and creditors when the Bankruptcy Code fails to supply a federal rule." *Tidewater Finance Co. v. Kennedy*, 531 F.3d 312 (4th Cir. 2008) (citing *Butner v. United States*, 440 U.S. 48 (1979)). Property interests, particularly, are left undefined under the Bankruptcy Code and are thus governed by state law. *Id.* (citing *Lewis v. Manufacturers Nat'l Bank*, 364 U.S. 603, 609 (1961)). "Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy." *Id.* (internal quotations omitted).

Under West Virginia law, "[a] court of equity has power and jurisdiction to decree the reformation of a deed executed through a mutual mistake of the parties . . . or through a mistake of a scrivener." *Johnston v. Terry*, 36 S.E.2d 489, Syl. Pt. 1 (W.Va. 1946). However, "[r]eformation of a deed or other writing by a court of equity on the ground of a mutual mistake of the parties to deed, or a mistake of the scrivener, will not be decreed where to do so would prejudice the right of

5

an innocent purchaser for value of the property covered by the deed sought to be reformed." *Id.,* Syl. Pt. 2.

Pursuant to 11 U.S.C. § 544, the debtor-in-possession may have the status of a judicial lien creditor or a bona fide purchaser without notice, in other words, that of an innocent purchaser for value. The Bank argues, however, that this power granted under § 544 is inapplicable. West Virginia law specifies that, "[a] purchaser of land who has knowledge of a mistake in the deed of his grantor, and of the true intent and design thereof, is not a bona fide purchaser for value, and stands in no better position than the original parties." *Stickley v. Thorn*, 106 S.E. 240, Syl. Pt. 2 (W.Va. 1921). According to the Bank, the discrepancy between the general description of the property ("[t]he Real Property or its address is commonly known as 398 Acres Northwoods Subdivision, Eleanor, WV 25070") and the more specific description of property was enough to put a purchaser or creditor on notice of a mistake in the deed of trust. The Bank argues that because of this discrepancy the debtor-in-possession had "constructive" or "inquiry" notice of the Bank's interest in the property and as such should not be allowed to stand in the position of bona fide purchaser or judicial lien creditor in order to block reformation of the deed of trust.

In support of its position, the Bank relies heavily on the West Virginia Supreme Court decision of *Gullett v. Burton*, 345 S.E.2d 323 (W.Va. 1986). *Gullett* involved the mistaken transfer of a single 1/3 undivided interest in property by the owner, Mitchell, to two different parties, the Gulletts and the Burtons. *Id.* On October 31, 1977 Mitchell executed a deed to the Gulletts transferring his 1/3 undivided interest in the property. *Id.* at 325-26. The deed of transfer referenced the correct tract of land but also erroneously identified a separate tract of land owned by Mitchell, which was not meant to be included in the conveyance. *Id.* References to two different deed books

were included, for both the correct and erroneously included property. Months later, Mitchell transferred his 1/3 interest in the property again to the Burtons. *Id.* The Gulletts sued claiming that the deed to the Burtons was a cloud on their title. *Id.* at 325. The Burtons argued that they were bona fide purchasers without notice because of the ambiguous description of the property contained in the deed to the Gulletts. *Id.* at 326. The court held that the deed to the Gulletts was sufficient to place the Burtons on "inquiry" notice of the Gulletts' interest in the property. *Id.* at 327. The Burtons had admitted that the not only saw the Gulletts' deed in the courthouse, but had also seen the Gulletts personally improving a portion on the tract of land in questions. *Id.* at 326-327. In reaching its decision, the Court reiterated three syllabus points establishing inquiry notice in West Virginia:

> 1. Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third parties, so as to put him on inquiry into ascertaining their nature, will operate as notice.
>
> 2. A party is not entitled to protection as a *bona fide* purchaser, without notice, unless he looks to every part of the title he is purchasing, neglecting no source of information respecting it which common prudence suggests.
>
> 3. That which fairly put a party on inquiry is regarded as sufficient notice, if the means of knowledge are at hand; and a purchaser, having sufficient knowledge to put him on inquiry, or being informed of circumstances which ought to lead to such inquiry, is deemed to be sufficiently notified to deprive him of the character of an innocent purchaser.

*Id.* Based largely on these syllabus points, the Bank contends that the Bankruptcy Court erred when it found that the debtor-in-possession stood in position of a bona fide purchaser or judicial lien creditor for purposes of preventing reformation of the deed of trust.

The Official Committee of Unsecured Creditors (Unsecured Creditors), as Appellee contends that the deed of trust did not contain language which would have put parties on notice that the parties intended to encumber the disputed 131 acres. The section entitled "Legal Description" appears complete and contains no contradiction or ambiguity. It makes no mention of the disputed 131 acres. The Unsecured Creditors point to several West Virginia authorities for the proposition that a specific description in a deed takes precedence over a more general description. *See South Penn Oil Co. v. Knox*, 69 S.E. 1020, Syl. Pt. 2 (W.Va. 1910) ("As a general rule, a particular description prevails over a general one, and limits the application of the latter. That which is the more certain is entitled to the greater efficacy."); *Sally-Mike Properties v. Yokum*, 332 S.E.2d 597, 603 (W.Va. 1985) ("Typically, general references to quantity, within the context of more specific descriptions of property, are not held to be a controlling factor as to the area of land conveyed or excepted."); *Crim v. O'Brien*, 73 S.E.271 Syl. Pt. 3 (W.Va. 1911) ("If two inconsistent descriptions of land intended to be conveyed are contained in a deed of conveyance, one general and indefinite as to boundaries, and the other specific as to boundary lines and corners, the latter description will prevail over the former."). The Unsecured Creditors also point out that Mr. Embree purposely omitted the 131 acres from the deed of trust, which he prepared, and that an individual not involved in this dispute purchased a lot from within the 131 acres and did not insist upon any release from the Bank.

It is the opinion of this Court that the discrepancy in the deed of trust was insufficient to place a creditor or purchaser of notice, inquiry or otherwise, of the disputed 131 acre tract. As such, the debtor-in-possession is entitled to status of bona fide purchaser and/or judicial lien creditor, pursuant to 11 U.S.C. § 544, and thus an innocent purchaser who is able to block the reformation of the deed of trust during the pendency of the bankruptcy proceedings. The statement in the deed

referencing 398 acres simply provides, "The Real Property or its address is commonly known as 398 Acres Northwoods Subdivision, Eleanor, WV25070." While this serves as a reference to the property, it is only a very general description at best. As it appears in the deed, it seems likely intended to provide nomenclature for the property rather than establish any detail of the property encumbered. When compared to the "Legal Description," which is detailed, contains precise boundaries, and appears to be complete, it becomes obvious that it is not meant to be the main identifier of the property.

A reasonable person interpreting the deed would not be on notice of a mistake in the deed simply because the total acreage of tracts within the "Legal Description" did not add up to the 398 acres included in the first reference of the property. There are several legitimate reasons why the acreage of land conveyed might differ from the acreage of the common reference. As the Bankruptcy Court below noted, "when several tracts of land are combined into one tract, it commonly leads to difference in acreage." *In re Tolley,* slip. op. at 2. It would not be uncommon for some parcels of the land in the 398 Acres Northwoods subdivision to have been conveyed separately, prior to the creation of the deed of trust. Finally, and most simply, a reader of the deed would not rely on the general reference to the land to provide information carefully included in a specific description of the property and its boundaries. This is far different than the situation in *Gullett,* where the purchaser had conflicting references to property maps contained within two separate deed books and actual knowledge of another party's occupancy on the disputed property. For these reasons the Court **FINDS** that a purchaser or creditor would not be on notice of an encumbrance of the disputed 131 acres, and consequently the debtor-in-possession has a status which defeats the rights of Appellant Putnam County Bank with respect to the 131 acre tract.

II. **The Bank Had The Opportunity to Litigate Its Claim to the Disputed 131 Acres in Bankruptcy Proceedings and Is Prevented From Litigating This Claim in Alternate Fora.**

The Bank takes issue with certain statements in the Bankruptcy Court opinion that it says can be read to say that the very commencement of an adversary proceeding on the 131 acres is a violation of the automatic stay contained within the Bankruptcy Code. In his opinion, Judge Pearson wrote, "[11 U.S.C. § 544] puts an end to a creditor's ability to improve its position as of the filing of a bankruptcy case, and prevents recordation or reformation action such as this, after a bankruptcy case has been filed." *In re Tolley*, slip op. at 2. In the next paragraph he found,

> it would be impermissible for the Court to grant stay relief to permit the Plaintiff to seek in state court an order reforming its deed of trust to specifically include as property conveyed therein the 131 acres, and such a proceeding is and should be subject to the stay whether commenced in the Bankruptcy Court or anywhere else because it is the Plaintiff's objective to improve its position with respect to the property

*In re Tolley*, slip op. at 2.

Based on the analysis explained in the prior section, the Court concludes that the Bank has had the opportunity to litigate its position with respect to the disputed 131 acres. Judge Pearson, as well as this Court, found that § 544 serves to bar reformation of the deed of trust by conveying upon the debtor-in-possession the status of bona fide purchaser or judicial lien creditor. In this way that section prevents recordation or reformation after the bankruptcy action has been filed.

Section 362 of the Bankruptcy Code is an "Automatic Stay" provision. It serves to stay certain actions during a bankruptcy proceeding including those meant to "create, perfect, or enforce any lien against property of the estate" unless specifically exempted. 11 U.S.C. § 362. "This stay serves to protect the relative position of the creditors and to shield the debtor from financial pressure

during the pendency of a bankruptcy proceeding." *In re Avis*, 178 F.3d 718 (4th Cir. 1999). The stay, however, "does not operate against the court with jurisdiction over the bankruptcy." *In re Sammon*, 253 B.R. 672, 680 (Bankr. S.C., 2000) (quoting *In re FRG,* 121 B.R. 710, 714 (Bankr. E.D. Pa. 1990); *see also, In Re Teerlink Ranch Ltd.,* 886 F.2d 1233, 1237 (9th Cir. 1989). In fact, the determination of "the validity, extent, or priority of liens" is defined as one of the "core" proceedings of a bankruptcy judge. 28 U.S.C. § 157(b)(2)(K). Section 362 does not prevent litigation over the validity or extent of a lien within the bankruptcy proceedings; however, it does prevent the pursuit of actions outside the Bankruptcy Court which would improve the creditors position with regard to such a lien. In this case § 362 did not prevent litigation over the disputed 131 acres, as Judge Pearson determined on the merits that the property was not encumbered by the deed of trust. As Judge Pearson noted it would prevent an additional action, in state or federal court, which would attempt to reform the deed of trust.

**III.    The Bank's Final Argument – That the Bankruptcy Court Erred in Concluding that the Debtor-In-Possession Was Not Bound By Constructive Notice As A Result of 11 U.S.C. § 544(a) – Is Moot.**

The Bank's final argument is that the Bankruptcy Court erred when it concluded that the debtor-in-possession would not be bound by constructive notice because of the status granted under 11 U.S.C. § 544(a). Appellant argues that under Fourth Circuit and West Virginia precedents a debtor-in-possession can be bound by constructive notice, including inquiry notice. This argument is moot, however, as both Judge Pearson and this Court have concluded that the debtor-in-possession was not put on constructive notice of the Appellant's claim to the disputed 131 acres.

Document    Page 12 of 12

Case 3:08-cv-00365 Document 7 Filed 08/16/10 Page 12 of 12 PageID #: 64

## CONCLUSION

For reasons explained below, the Court **AFFIRMS** the decision of the Bankruptcy judge. The appeal of Putnam County Bank is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: August 16, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE